docket 24-50-52. Counsel, please proceed when you're ready. Good morning. May it please the Court. My name is Gregory Act and I'm representing the appellant, Garen Michael Thompson, in this case. This is the case where Mr. Thompson took his daughter to a gymnastics competition and took her from Oklahoma to Texas to compete in this competition. And while they were there, he committed a sexual assault there. And what the point of this appeal is that the jury was only asked to find whether or not he had the intention to do this prior to leaving for Texas. And we don't take issue or we're not in a position to take issue with the jury instruction that had been there at the time, would have asked for a different jury instruction, but that wasn't objected to. But nevertheless, the issue remains was there sufficient evidence of what the government did have to prove irrespective of whether or not the jury instruction itself guided the jury sufficiently. And what the jury was, the jury was only asked to decide whether or not he had the intention of doing so and did not require the jury to find that he had, that it was really the dominant purpose of the trip. And that goes, that word dominant purpose goes way back. We have some reason, we have the recent case here in the phrase efficient and compelling purpose, but it still goes back to these cases from the 40s and early 50s. The Mortensen case in. Counselor, can I just stop you there? Please, please. To go back to what you talked a lot about the jury instruction or they weren't asked a particular question, but you just so I understand you, you are not before us challenging the jury instruction. You're not making that claim. You're only making a sufficiency claim. Only a sufficiency of the evidence claim. Absolutely, yes. I think I have this, I thought it was an older case, but it looks like in my notes here, it's a 19, 1944 U.S. Supreme Court. An intention that the woman or girl shall engage in the conduct must be found to exist before the conclusion of the interstate journey. I think we probably got that here. But then it says and must be the dominant motivation for such interstate movement. And so it has to be the dominant motivation. I think court says that. So that was before the 1948 revisions to the statute. Well, and I think. Isn't that correct? Yes, Your Honor, I think there have been a number of revisions. And they took the word purpose out. Right. And they and. So it's a whole different field now after that, after that 1948 statutory change. I don't know if it has a completely different feel because we still look back just as recently as 2018 Lacey case. We look back there for some guidance on this because it's not, it's not just intent. There is a standard. It's not just any intent. There's a standard. And so I was going to say it's not that it has to be the dominant purpose. It doesn't have to be the dominant intent.  And you don't have to show motivation. You just have to show intent. Correct. I'm not sure I know the difference between intent and motivation in this context, but I think, I think if to cut to the chase on this, I think that there's a, there's a, these, these two cases, the two more recent cases, the Lacey case, which is the man prostituting the women. And then he leaves the state to hide out. And his defense was, well, I was just hiding from the law. And the question is, okay, well, that's all well and good, but what was she doing there? And then in the Meacham case from 1997, the commercial truck driver, this commercial truck driver, he drives a truck, he goes across state lines. Okay, well, that's all well and good, but what was she doing there? I think that's really the question is what, what is she doing there? What's her purpose for being along on this trip? And that's why this case is so different from the cases where they found that there was that purpose to it. Were you going to ask me something there, Your Honor? But, but you, you agree regardless that at least post-1948, is it, there can be multiple intents as long as one of the intent is to sexually assault. I agree there can be more than one intent. But there's a standard to that intent. There's a standard to it. It's not just any anticipation. It's not just any expectation. No, it's not anticipation. Well, it's intent to do it. Okay, but it's, it, but that's just. It doesn't have to be the primary intent. Isn't that correct? It doesn't have to be, no, it doesn't have to be the primary intent. But again, going back to. Well, you can have a circumstance where somebody wants to transport somebody into interstate commerce for a lawful purpose. But while I'm there, I intend to commit an unlawful act, a sexual assault. And you can be convicted on that basis. That would be sufficient. I don't think, I don't think that's effectively standardless. It's basically saying any intent is sufficient. I, this is a case where the trip never would have happened had she not gone along. You have conceded, I thought, that the intent to commit a sexual crime does not have to be the primary intent. It does not have to be the primary intent. Okay. But there's still a standard for the intent. The primary intent is to transport somebody for a gymnastics meet. But a secondary intent is while I'm there, I'm going to commit a sexual crime. That's good enough, isn't it? I don't think so because the word is compelling. I don't, see, here's the difference. The trip would not have taken place. The trip would never have happened. This is a but-for type argument. But it explains the compelling purpose. It explains it's important to look at that and say, okay, he didn't, he didn't decide the timing. He didn't decide the arrangement. It was going to be just him because it was his wife that decided to stay home. According to your standard, as long as that standard was met, the moment before they crossed the state line, that would be enough, correct? I'm sorry, again? Okay. Under your standard. Yes. If they put on evidence that the moment before they crossed the state line, he had the intent to make your standard have sex with his child. If he meets that standard, yes, it has to be before he crosses the state line. In this case, the determination that there was going to be travel to a gymnastics meet happened long before or before it was determined that the wife, I think her name was Holly, could not go, correct? Right. So at that point in time, if he formed the intent that while I am there, I'm going to sexually assault this child, that would be enough, correct? I don't believe so. Can I go back? I think it's the Meacham case, the truck driver, where the court actually said the question is why was she going? What is her purpose in going? And so, again, I don't think that that's sufficient. She was going to go to be in a gymnastics competition that was going to happen regardless. All of this would have happened regardless, and if she hadn't gone, it would not have happened at all. So I think that that puts that purpose as not only the predominant purpose, but the compelling purpose. I'm not really sure what the word efficient does there, but I do know how it's being applied, and this is the extreme opposite of how it's been applied. If I may, I'd like to just, because the other count is actually one that's got a very high statutory minimum, this count two, if I may move on to that, unless the court. Well, I have one more question.  So under, I think what the government's going to say or has said in their briefs is that the defendant here took advantage of situations. He may not have set them up, but there was evidence that when the mom went to the grocery store, the mom, you know, took the other kids and, you know, here the mom had to get a colonoscopy. He took advantage of that situation, and I'm wondering, is that just not actionable? I mean, can you not form an intent if you take an advantage of a situation? You didn't set it up, but, you know, the situation presented itself, and you took advantage of that. You used it as an opportunity. I think it depends on the context. You know, I mean, obviously as a state law crime, you know, it requires intent, and taking advantage of a situation, you know. Well, I think you're not answering. I mean, I guess could taking advantage constitute intent? You're just saying it didn't in this case. I'm not saying that it, I'm sorry. I'm done. I'm not saying that there was no intent. What I'm saying is if we look at cases like Lacey and Meacham and all these other cases, that mere intent, this is the minimum intent that I can imagine. It's intent. I give it. It's intent, but I can't imagine a scenario where there's less intent. It's just, yeah, he may be looking forward to it, but in terms of the intent, in terms of the purpose, because we're still going at this efficient and compelling purpose, which is a phrase we're still using in 2018, that when that, you've got that purpose crossing the state line, that's the purpose of the trip. I don't think that that's, I don't think that's what our history of cases interpreting this act require. Thank you. Real quickly on this other one, I know that the government called attention to the Walker case about evidence. I'm just going to take some time here to distinguish that case. They used that case to say, look, in our case, we have the ex-wife and the daughter saying he's not a member of the Indian tribe or an Indian tribe. He's not an Indian. And in the Walker case, we had his, we had, I think, a niece and a police sergeant. And the question wasn't whether there was sufficiency of the evidence. The question was whether it was a mistake or an error for the judge to let that evidence in. And in one instance was a plain error having to do with the niece. And the court said this close relationship was sufficient for Ms. Dierickson to testify. OK, that's fine. But that doesn't say there's sufficient evidence. And then Sergeant Lizzie, what's interesting about that is he testified that after McGirt case, he now has to inquire whether somebody is a member of any federal, any federally recognized tribe. And it doesn't really say how he inquired. And so you're wondering, is it hearsay? But then in another paragraph, like in the same breath, it says the personal knowledge standard is not difficult to meet. And a rational jury could find that he had personal knowledge because he was required to undertake these inquiries. So all this tells us is that those inquiries could have been made, but they weren't made here. They were just people. There's no indication that his family members took any particular interest in whether or not he had any degree of Indian blood. And this is a serious crime. And they had a responsibility to prove each element beyond a reasonable doubt. I'd like to reserve the rest of my time for you. You're saying that the relationship of husband and wife and the relationship of father-daughter is insufficient to have a foundation that they had knowledge? I'm not contesting. Is he not an enrolled member of the federally recognized tribe? I have two parts to that. Two parts to that. One, it is admissible. And that's what Walker tells us, is that it is admissible. But when you're talking about a negative as opposed to a positive, proving somebody is not a member, well, that takes a little bit more. And did this family have any interest in genealogy? Did they take any? Do we know that they had any conversations on this, whether it was important to them? None of that's in the record. And so this question of – Well, let me ask you this. The obligation to challenge their credibility because of their lack of knowledge or lack of foundation for their testimony, isn't that incumbent on the defendant's lawyer to do? And he should have objected. He did not object. But the question here is whether there was sufficient evidence. So that doesn't get the government – But the evidence came in. And it was his obligation to try to keep it out. And he didn't keep it out because he did not challenge the foundation for their testimony. So it's gone. He didn't do his job. He or she didn't do their job. And that's it. It's over. Correct?  It's admitted. That's fine. The question is whether what is admitted is sufficient to be able to say beyond a reasonable doubt that this man was not a member of an Indian tribe. So what would be sufficient? Well, they'd have to at least do some kind of investigation. I mean, you can – in the Walker case, we have Sergeant Lizzie, who apparently had the ability to do that. That's one thing the Walker case tells us. He was able to do an investigation. I imagine it's a database. At least they can check the federally recognized, you know, whether he's a member. And then there could be a DNA test taken. Or there could be some genealogical research. I'm not saying it's easy, but it is a serious crime. And it is an element. And they did have an obligation or they had a burden to prove it beyond a reasonable doubt. Thank you. Thank you. May it please the Court. Elliot Anderson for the United States. This Court should affirm on the 2423A conviction because under any reading of the word intent, whether intent simply means intent or whether it also carries a connotation of motive or purpose. Could you explain to me how this happened, that purpose got back into this statute after it was taken out? I just don't – it's beyond me. I don't understand. And is this like a super intent that has to be shown or a moderate intent or what? My pet theory, Your Honor, is that Lacey and Meacham were not concerned with how to interpret intent. They were confirming the longstanding rule that under the Mann Act, intent can be mixed. You can have a legal intent and an illegal one and you're still guilty. So in citing that rule, Lacey and Meacham reached back to the old cases, which in turn are reaching back into the 40s. And that language propagates whenever you're looking for a case that says intent mens rea can be mixed. Lacey and Meacham weren't saying that we should ignore what Congress did when they amended the statute and kicked out purpose and left it with intent. Unfortunately, to this point, we just don't have something on all fours. Examining the question, we do have the Cryer case here from this circuit, which looked at 2241 and noted, hmm, this statute just says intent. We've got a purpose standard here. Maybe that bar is too high, but no matter. The evidence here is sufficient to satisfy either standard. We'll affirm. This court could do the same thing here. But I really can't explain why it's not clearer, especially when in 2023, Congress amended 2423B and said we're stamping out the last iteration of purpose here because intent means intent. It doesn't mean motivating significant dominating. Now you're talking about the 2023 amendment. I am, Your Honor. All right. But in the preamble to that. It would suggest that if we follow your lead, there's no reason to straighten it out because effectively the 2023 statute has done that. 2023 amended 2423B, the companion. Not the statute that Mr. Thompson was charged under here. 2423A has looked like this, as you noted, for 75 years. Purpose hasn't been in the statute. Just when Congress brought the next provision into line, they explained we don't like this. I was going to make the trip anyway defense. So they've eradicated it there, but it hasn't existed under A for a long time. So Lacey and Meacham, I view them as not really on point in terms of they're discussing a different rule, not how do we interpret the word intent. But even if we need some sort of compelling, motivating, a significant purpose, the evidence would be sufficient here. The jury heard that Garen Thompson took his daughter to Texas and spent the whole evening abusing her until she asked if she could please just go to sleep. We heard that as soon as he got home, he sat down with her and said, don't tell mom. This is between you and me. This was not an afterthought or the first time that he had ever done this. He had been abusing the children in his household for 20 years when he had them alone. We also know that he had a habit and practice of he was interested in his daughter's sexuality around the house. He had cameras at specific times and locations when he knew he could catch his daughter's undressing. Then he removed the cameras, save the files to his computer and extracted the images that pleased him most. The search history on his computer demonstrated that he had an interest in father-daughter incest. Any reasonable juror could look at all of those facts and make the reasonable inferences and conclude that Mr. Thompson may have had a plan, pre-existing plan, to take his daughter to a gymnastics tournament. When events unfolded such that his wife would not be able to come along the way she always did, a reasonable jury could believe that Thompson amended that plan and added one more agenda item. He would take his daughter to Texas, and then while he had her there, far, far away from her mom and four other sisters, he would abuse her in the hotel. This jury did believe that, and this court should affirm. Now, Judge Murphy noted that defense is basically arguing for a but-for standard here. He's still arguing, I would have made the trip anyway. Even if that were the standard, a jury could question that motivation. He didn't have to make the trip. Holly Thompson was, as she described it, bedridden. She was so sick she was either in bed or in a chair all day, and the very next day she was scheduled to go in for a colonoscopy. Which, if you had experience with that, that takes a person out of commission for a while. Don't go there. Garen Thompson could have decided, wow, honey, I guess we'll just skip this meet and I'll stay home to take care of you. But, in fact, he made the choice, did not seem to hesitate, to take his daughter and leave his wife. And taking his daughter on the trip was part of the abuse. They were in a busy household. There were two adults, there were five older daughters, and Thompson needed to get A.T. away from the rest of them if he was going to abuse her. So, yes, a reasonable jury could believe that he left the house in Catoosa with that motive and purpose in mind. If there's no further questions on that, I'd like to move on to Indian status. As this court noted in Walker, family members are competent to testify to a defendant's Indian or non-Indian status. And as this court has noted in Ortner and elsewhere, a family member's testimony carries more weight than an outsider would. Here, the jury heard sufficient evidence to conclude that Garen Thompson is not an Indian. His wife of 12 years, Holly Thompson, she has known this man for over a decade, testified quite clearly he's not enrolled in any tribe, and no, he's not an Indian. His daughter, S.T., who was 12 years old at trial, who is herself an enrolled Indian, she testified that she was enrolled because she got her Indian blood from her mother. She did not say that she got her Indian blood from her father, Garen. And a reasonable inference from that is that she didn't get her Indian blood from Garen because he's not Indian and doesn't have any Indian blood. In fact, S.T. testified just a few sentences later, no, my dad is not an Indian. So two individuals who've known Mr. Thompson for 12 years, who know what it is to be an Indian and to be enrolled, testify he's not an Indian and he's not enrolled. Garen Thompson did not cross-examine them, question their credibility, and not in any way to shift the burden to him on this point, but just to point out that we examined the evidence the jury had, and here there was sufficient evidence, and it was uncontroverted. Now, yes, in this circuit, the government has the burden to prove the negative on non-Indian status. But as with proving any other element of guilt, the government is not required to conclusively eliminate every other possible interpretation or outcome. Here the government gave the jury sufficient testimony from two family members showing that Garen Thompson is not an Indian. Yes, Your Honor. I thought you said that S.T. had known, for eight years she'd known him. She'd known him for 18 years, right? Well, S.T. was 12 years old at the time of trial, and she was the daughter of Garen and Oh, she's 18 now? Yes.  Yes. My little chart didn't have a footnote saying that. I apologize, Your Honor. No, it's my chart. She was the daughter of Garen and his ex-wife. Shanna Knight. Yes. So that's why she testified, I'm enrolled, I got my blood from my mother. Yes. Don't get diverted. So we have more here than just an assertion from, say, a law enforcement officer, I checked with five tribes, he's not enrolled in any of them. What we have here is family members saying he's not enrolled with any federally recognized tribe, and he's not an Indian. The typical indication of Indian status would be known to a family member, and it was a reasonable inference that Holly and S.T. testified that Garen Thompson wasn't an Indian because there was no indication that he is. What would be an indication? Benefits or something else? There are several, Your Honor. Enrollment, other recognition, health care, other tribal benefits, social participation in tribal life. Again, the government's duty here, the appellant has cited no case saying that in proving the negative, the government has to eliminate every possible indicator of Indian status. But here, two people who know him well felt comfortable saying that there was none. If there are no further questions, thank you very much for your time. Thank you. Counsel, you did use all your time, but I'm going to give you two minutes for rebuttal. Oh, yes. If you want. You don't have to use it. I really have nothing more to add. All right. Very well. Unless the court has follow-up questions for me. I think we're good. And thank you both for your arguments. The case is submitted and counsel are excused.